UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT PRECOPIO,                    Civil Action No.: 18-13127
                                    Magistrate Judge Elizabeth A. Stafford

                    Plaintiff,

v.

THE KROGER CO.,

                    Defendant.


**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 22]**

## I.    Introduction

Plaintiff Robert Precopio sues The Kroger Co. for interference and

retaliation under the Family Medical Leave Act (FMLA), 28 U.S.C. § 2601

*et seq.*, and for discrimination and retaliation under the Michigan Persons

with Disabilities Civil Rights Act (PWDCRA), M.C.L. § 37.1101, *et seq.*

Kroger moves this Court[1] for summary judgment, arguing that

Precopio's claims fail to establish a prima facie case for interference or

retaliation under FMLA, and that he cannot rebut its legitimate,

nondiscriminatory reasons for terminating him.  [ECF No. 22].  The Court

---

[1] The parties consented to this Court conducting all proceedings including
trial, entry of final judgment and all post-trial proceedings under 28 U.S.C.
§ 636(c) and Federal Rule of Civil Procedure 73.  [ECF No. 24].

finds that there are questions of fact that defeat summary judgment on the FMLA interference claim.  But Precopio has not shown that Kroger's articulated reason for terminating him was a pretext for an unlawful motive, so the Court grants summary judgment of his retaliation claim.

## II.    Factual Background

Precopio was employed as a dairy department manager for Kroger until he was terminated for alleged violations of its call-in absence policy in March 2018.  [ECF No. 22, PageID.105-114].  He began working for Kroger in 2009 as a courtesy clerk and held several positions at its stores until his termination.  [ECF No. 22-2*,* PageID.129-131].

In May 2017, Precopio began treatment for severe anxiety and depression.  [ECF No. 25-8, PageID.408].  He was experiencing panic attacks later in 2017, and he sought and was approved for intermittent FMLA leave from Kroger retroactive to December 18, 2017.  [*Id.*, PageID.410; ECF No. 22-14, PageID.200].  Precopio used his intermittent FMLA leave without controversy on occasions in January and early February 2018.  [ECF No. 22-2, PageID.141].

The parties agree that Precopio did not report for scheduled shifts on February 20, February 22, and March 25, 2018.  Precopio argues that his absences on February 20th and March 25th were due to his illness and

were appropriately classified as FMLA leave, and that he was unaware that

he had a training scheduled for February 22nd.  [ECF No. 25, PageID.337,

344].  But Kroger disciplined and ultimately terminated Precopio because

he failed to call store management at least one hour prior to the beginning

of these shifts. [ECF No. 22-21, PageID.224; ECF No. 22-3, PageID.160].

The parties do not dispute that Precopio used his approved

intermittent FMLA leave for his shifts scheduled for February 18 and 19,

2018.  [ECF No. 25-14, PageID.446].  They also agree that Precopio called

the store to report his absence after the start of his shift on February 20.

[ECF No. 22-2, PageID.144-145].  But Precopio also testified that he

notified assistant manager Henry Adams on the evening of the 19th that he

would not report for his shift on the 20th.  [*Id.;* ECF No. 22-25, PageID.253].

Adams testified that Precopio called and spoke to him on what he believed

was the evening of February 18th to report his absence under his FMLA

leave for his shift that day.  [ECF No. 22-28, PageID.272].  Adams said that

he could not remember if Precopio indicated he would miss other shifts that

week, or if he reported Precopio's call to anyone else with Kroger.  [*Id.*]

It is undisputed that Precopio did not phone store management

before missing the training on February 22nd.  [ECF No. 22-2,

PageID.142].  Precopio asserts that he did not phone in for FMLA leave for

3

February 22nd because the training "wasn't on the schedule" and he "didn't see it posted." [ECF No. 22-26, PageID.255]. Precopio testified that the schedule was generally posted on Thursdays but that, in this case, the February 22nd training "wasn't on the schedule after it was posted." [ECF No. 22-2, PageID.145-146].

Precopio was not routinely scheduled to work on Thursdays, but the February 22nd off-site waste solutions training was "a huge rollout for the company so every department head lead in store management was involved." [ECF No. 22-22, PageID.235-236; ECF No. 22-26, PageID.255; ECF No. 22-27, PageID.264]. Kroger submits evidence that the training was widely advertised and Precopio's supervisor, Travis Blair, testified that he was certain that Precopio was told about the training in team "huddles." [ECF No. 22-22, PageID.235-236; ECF No. 22-29, ECF No. 275-279].

Even so, there is no documentary evidence that Precopio was notified of the February 22nd training. The wall schedule for that week that Kroger includes as an exhibit indicates that it was "created" on March 18, 2018, which Kroger says was the date the schedule was printed in response to a union grievance. [ECF No. 22, PageID.109; ECF No. 22-17, PageID.216]. Kroger also acknowledges that it does not have a copy of the paper schedule that was posted or the email notifying managers about the

4

February 22nd training, as those items were disposed of before the case was filed under its normal procedures.  [ECF No. 27, PageID.540].

After Precopio's February 22nd absence, Kroger disciplined him for having a second no-show/no-call violation of its attendance policy.  [ECF No. 22-18; ECF No. 22-19; ECF No. 22-27, PageID.261].  Precopio contested the validity of the discipline by initiating the union-sponsored grievance process. [ECF No. 22-25; ECF No. 22-26].

Precopio testified that he failed to timely call in his absence for his shift on March 25, 2018 for two reasons: (1) his scheduled shift on March 25th was the result of a schedule changed about which he had not been notified, and (2) he was too sick and was in treatment. [ECF No. 22-2, PageID.142, 146-148; ECF No. 22-31].  He said that he called in after his shift even though he had not been notified of the schedule change because "then I seen [the schedule change] and I was already sick at the time, so I had to call in."  [ECF No. 22-2, PageID.142].  Precopio maintains that he complied with the FMLA rules by calling in as soon as he was able, even though he did not call in until after his shift.  [ECF No. 22-2, PageID.146; ECF No. 25-16, PageID.453; ECF No. 25-17, PageID.457].  But Kroger notes that call and text records show that Precopio was able to use his phone during his scheduled shift.  [ECF No. 22-36, PageID.302; ECF No.

5

22-38, PageID.310-320].  Kroger considered this no-show/no-call a third

violation of its attendance policy within a 90-day period and thus

suspended Precopio pending investigation for discharge.  [ECF No. 22-27,

PageID.261; ECF No. 22-4, PageID.168-169].  After Precopio's

unsuccessful grievance of this alleged violation, Kroger terminated his

employment.  [*Id.*].

## III.   Analysis

## A.

"The Court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court's

function at the summary judgment stage "is not to weigh the evidence and

determine the truth of the matter but to determine whether there is a

genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249

(1986).

The party seeking summary judgment bears the initial burden of

informing the Court of the basis for its motion and must specify the portions

of the record that show the absence of a genuine dispute as to any material

fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the movant

satisfies this burden, the burden shifts to the non-moving party to go

beyond the pleadings and set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The Court must view the factual evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**B.**

Courts recognize "two distinct theories for recovery under the FMLA: (1) the 'entitlement' or 'interference' theory arising from 29 U.S.C. § 2615(a)(1); and (2) the 'retaliation' or 'discrimination' theory arising from 29 U.S.C. § 2615(a)(2)." *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir.2004).   In order to prevail under the interference theory, a plaintiff must prove that: (1) he was an eligible employee, (2) the defendant is defined as an employer under the FMLA, (3) he was entitled to leave under the FMLA, (4) he gave the employer notice of his intent to take leave, and (5) the employer denied him FMLA benefits or interfered with FMLA rights to which he was entitled.  *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).  The parties agree that only the fourth and fifth element are in dispute.  Because the relevant issue is whether the employer provided the employee with the entitlements provided by the FMLA, an employer may violate FMLA "'regardless of the intent behind its conduct.'" *Ritenour v.*

7

*Tennessee Dep't of Human Services*, 497 F. App'x 521, 530 (6th Cir. 2012) (quoting *Hoge*, 384 F.3d at 244).

Even so, "the mere occurrence of interference with an employee's FMLA rights is not a per se FMLA violation." *Verkade v. United States Postal Serv.*, 378 F. App'x 567, 575 (6th Cir.2010) (internal quotation marks omitted). "[I]nterference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the conduct." *Edgar*, 443 F.3d at 508 (citing *Arban*, 345 F.3d at 401).  If an employer provides such an unrelated, legitimate reason for terminating the employee, the plaintiff must "rebut the employer's reason by showing that the proffered reason had no basis in fact, did not motivate the termination, or was insufficient to warrant the termination."  *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).

Kroger argues that it is entitled to summary judgment on Precopio's FMLA interference claim because he violated Kroger's no-call/no-show attendance policy on February 20, February 22 and March 25.  Precopio counters that he satisfied the notice requirements set forth in Kroger's letter approving his request for intermittent FMLA leave and its FMLA policy, and because Kroger's proffered reason had no basis in fact.  [ECF No. 25,

8

PageID.341-346; ECF No. 25-16; ECF No. 25-17; ECF No. 22-4, PageID.168-169].

Kroger's January 8, 2018 letter to Precopio approving his FMLA request did mandate that he notify store management "when having to call-in due to the FML." [ECF No. 25-16].  But the letter did not address the timing of that notice.  [*Id.*]  Precopio argues that Kroger's FMLA policy dictated the timing of his reporting obligations—one to two business days after discovering the need for an unforeseeable leave. [ECF No. 25-17, PageID.457].  Despite this artful argument, Precopio conceded in his deposition that he knew he was to call-in his FMLA absences at least one hour before the start of a shift he would miss.  [ECF No. 22-2, PageID.140, 146].

Employees entitled to FMLA leave may be rightfully terminated for violating attendance policies.  *Allen v. Butler Cty Comm'rs*, 331 F. App'x 389, 394-95 (6th Cir. 2009).  In *Allen*, the Sixth Circuit held that an employer's call-in policy, which applies to all employee absences and not just those under the FMLA, neither conflicts with nor diminishes FMLA protections. *Id.* at 396.  FMLA leave does not shelter an employee from the obligation to comply with the employer's absence notification policy, which is the same as that of any other employee.  *Ritenour*, 497 F. App'x at 531.

9

Indeed, "an employer may enforce its usual and customary notice and procedural requirements against an employee claiming FMLA-protected leave, unless unusual circumstances justify the employee's failure to comply with the employer's requirements." *Srouder v. Dana Light Axle Mfg., LLC*, 725 F.3d 608, 615 (6th Cir. 2013). But a court may not grant summary judgment on the issue unless there is no factual dispute that the employee violated the attendance policy. *See Kidd v. Charter Communications, LLC*, 2016 WL 11551172, at \*3-\*5 (W.D. Mich. March 2, 2016) (holding question of fact about whether plaintiff violated no-call, no show absence policy was properly resolved by the jury).

There are questions of fact in this case that preclude summary judgment.

### *1. February 20th Absence*

Precopio testified that, in the evening of February 19, he notified Adams that he was taking FMLA leave on February 20 because he was sick and was grieving a family member. [ECF No. 22-2, PageID.144-145]. Adams's testimony confirms that Precopio called him to report FMLA leave, but Adams said that the call took place on Sunday evening, which would have been February 18, and that Precopio was calling for "his shift that happened that day." [ECF No. 25-18, PageID.464]. Adams's testimony

10

thus suggests that Precopio failed to call before his February 18th absence, in violation of Kroger's no call/no show policy.  But Kroger has not alleged that Precopio was a no-call/no-show on February 18th.  A reasonable jury could therefore conclude that Precopio's call to Adams on February 18 or 19 was about a future absence instead of one that had already occurred.

And although Precopio at first testified that he did not call to report his absence on February 20 until after the start of his shift, [ECF No. 22-2, PageID.140,145], a plaintiff's inconsistent testimony "can establish genuine issues of material fact because such inconsistencies go to the credibility of the witness and not the admissibility of the testimony."  *Muhammad v. Skinner*, 193 F. Supp. 3d 821, 832 (E.D. Mich. 2016) (citing *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir.2010)).

Precopio also notes that manager Candice Lopez signed an intermittent FMLA tracking sheet indicating that Precopio took FMLA leave on February 20.  [ECF No. 25-14, ECF No. 446].  Kroger counters that Lopez testified that she had only assumed that Precopio's absence that day was under the FMLA.  [ECF No. 22-3, PageID.164].  Denyann Holznagle, Kroger's associate relations specialist, testified that Lopez had erred in designating Precopio's absence on February 20 as being FMLA leave and that she had been counseled about that error.  [ECF No. 22-27,

11

PageID.260]. But during the hearing on this motion, Precopio argued that the intermittent FMLA tracking sheet is an admissible business record. *See* Fed. R. Evid. 803(6) (providing that records of a regularly conducted activity are admissible and not precluded as hearsay).

"The business records exception is based on the indicia of reliability that attaches to a record created or maintained by an employer in the ordinary or regular course of their business." *Cobbins v. Tennessee Dep't of Transp.*, 566 F.3d 582, 588 (6th Cir. 2009). Kroger's argument that the tracking sheet is not actually reliable is a question of fact, especially when combined with the testimony of Precopio and Adams. *See Kidd*, 2016 WL 11551172, at *3 ("[a]n employee's compliance, attempted compliance, or non-compliance with ordinary notice procedures is one of the factual issues a jury must consider" for a FMLA interference claim).

Kroger's officials may have had an honest belief that the information on the tracking sheet about the February 20 absence is wrong. Even so, Kroger cannot rely on the "honest belief rule" [2] to defeat Precopio's interference claim. That rule shields the employer from liability even if its articulated reason for the adverse employment action is ultimately found to

---

[2] The honest belief rule is discussed in greater detail in the Court's discussion of Precopio's FMLA retaliation claims.

be mistaken, but does not apply to FMLA interference claims because the employer's frame of mind is not at issue.  *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 533 (6th Cir. 2015); *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285-286 (6th Cir. 2012); *see also, Kidd*, 2016 WL 11551172, at *3 (a plaintiff may simultaneously provide sufficient FMLA notice to a defendant to sustain a FMLA interference claim and fail to establish a FMLA retaliatory motive if he does not negate that the defendant actually believed it was trying to enforce its attendance policy). The trier of fact must decide whether the evidence supports Kroger's belief that Precopio violated the attendance policy.

### 2.  February 22nd Absence

Kroger's argument that there is no factual dispute about Precopio's February 22nd absence rests mostly on evidence that everybody knew about the training that day.  [ECF No. 22, PageID.109].  The only direct evidence supporting Kroger's argument is Blair's testimony that he was certain that Precopio was present during huddles when the waste solutions training was discussed.  [ECF No. 22-22, PageID.235-236].  But Precopio denied knowing about the training; he said that Thursday was his regular day off, that the training was not on the schedule when it was originally

13

posted and that he did not see the posted schedule after it was changed. [ECF No. 22-2, PageID.145-146; ECF No. 22-26, PageID.255].

The documentation in the record is also insufficient for the Court to find as a matter of law that Precopio received advance notice of the training. Kroger did not preserve the actual schedule that was posted before February 22nd or the email communication about the training. [ECF No. 27, PageID.540]. Precopio suggests in a footnote that an adverse inference is appropriate because of evidence spoliation. [ECF No. 25, PageID.338 n. 1]. The Court will not entertain that assertion because of the rule that issues are waived when they are "'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation[.]'" *ECIMOS, LLC v. Nortek Global HVAC, LLC*, 736 F. App'x 577, 583-84 (6th Cir. 2018) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997). "It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson*, 125 F.3d at 995-96 (citation and internal quotation marks omitted). Even so, the lack of documentation evidencing Kroger's advance notice to Precopio that he had a training on his usual day off precludes the Court from finding as a matter of law that Precopio's February 22nd absence violated Kroger's attendance policy.

14

Without such documentation, the Court is left with Blair's testimony that he informed Precopio about the training and Precopio's testimony to the contrary that he was never informed that his schedule had been changed. The finder of fact may infer that Precopio's testimony is not credible because of the evidence that the training was widely discussed among Kroger managers and department heads. But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" ruling on a motion for summary judgment. *Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.*

### 3. March 25th Absence

Kroger correctly notes that Precopio's testimony about his March 25 absence was inconsistent. He testified that he failed to timely call in his absence for that shift both because he was unaware of the shift change and because he was too sick to call in that day. [ECF No. 22-2, PageID.142, 146-148; ECF No. 22-31]. According to the grievance notes, Precopio did not allege that he was unaware of his March 25 shift at that time. [ECF No. 22-31]. But as noted, his inconsistent testimony can still "establish genuine issues of material fact because such inconsistencies go

to the credibility of the witness and not the admissibility of the testimony." *Muhammad,* 193 F. Supp. 3d at 832.

To challenge Precopio's claim that he was unaware of his March 25th shift because the schedule had changed without him being notified, Kroger presents evidence that Precopio is not credible. [ECF No. 22, PageID.109-110]. But the Court cannot weigh Precopio's credibility at this juncture. *Anderson*, 477 U.S. at 255. In addition, Kroger presents neither Precopio's March 25th schedule nor evidence that would allow the Court to decide as a matter of law that he knew he was scheduled for a shift that day. Instead, Kroger notes that witnesses testified that they reviewed Precopio's schedule and other evidence that led them to deny his grievances and that led the union to find that his grievance lacked merit. [*Id.*]. The Court cannot grant summary judgment based on a finding that Kroger's witnesses are more credible than Precopio. *Anderson*, 477 U.S. at 255.

Because there are questions of fact about whether Precopio violated Kroger's attendance policy, the Court cannot decide as a matter of law that the policy provides a legitimate basis for terminating him. Summary judgment on the FMLA interference claim is denied.

16

**C.**

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: (1) he was engaged in a statutorily protected activity; (2) the employer knew he was exercising his FMLA rights; (3) he suffered an adverse employment action; and (4) a causal connection existed between the protected FMLA activity and the adverse employment action. *Seeger*, 681 F.3d at 283. "The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity." *Id.* (quoting *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir.2007) (internal quotation marks omitted).

FMLA retaliation claims are evaluated under the *McDonnell Douglas* burden-shifting paradigm. *Id.* Once plaintiff establishes the prima facie elements of a retaliation claim, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for discharging plaintiff. *Donald*, 667 F.3d at 762; *Seeger*, 681 F.3d at 284. If the defendant can so articulate, "the burden shifts back to the plaintiff to show that the defendant's proffered reason is a pretext for unlawful discrimination." *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007). "'[A] reason cannot ... be a pretext for

17

discrimination unless it is shown both that the reason was false, and that discrimination was the real reason.'" *Seeger*, 681 F.3d at 285 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).  In contrast to interference claims, the employer's motive is an integral part of the analysis under the retaliation theory.  *Edgar*, 443 F.3d at 508.

A plaintiff establishes pretext by showing that the employer's proffered reasons (1) have no basis in fact; (2) did not actually motivate the action; or (3) were insufficient to warrant the action.  *Seeger,* 681 F.3d at 285.  To demonstrate pretext under the "no basis in fact" prong, a plaintiff must show "'that the employer did not actually have cause to take adverse action against the employee based on its proffered reason, and thus, that the proffered reason is pretextual.'"  *Id.* (quoting *Joostberns v. United Parcel Service, Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)).  But if the employer honestly believes its proffered reason, an inference of pretext is not warranted.  *Id.*  Under this "honest belief rule," courts consider an employer's proffered reason honestly held where the employer establishes "it reasonably relied on particularized facts that were before it at the time the decision was made."  *Joostberns*, 166 F. App'x at 791 (internal quotation marks omitted). The burden shifts to the plaintiff to demonstrate that the employer's belief was not honestly held.  *Id.*  The "employee's bare

assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Id.*

Kroger argues that, even if Precopio did not in fact violated the no-call/no-show policy three times in 90 days, it honestly believed he had done so.  Kroger cites the testimony of several members of management who investigated the circumstances surrounding the decision to terminate Precopio and all independently concluded that he had violated the absence notification policy.  [ECF No. 22-3, PageID.160; ECF No. 22-22, PageID.233; ECF No. 22-27, PageID.260-261].  Kroger contends that Precopio has not offered any evidence that Kroger did not reasonably rely on the facts before it when it decided to terminate his employment.  The Court agrees.

Precopio cites Lopez's recording of the February 20 and February 22 absences as FMLA leave on the tracking sheet as evidence negating its assertion of an honest belief that he violated the no-call/no-show policy. [ECF No. 25-14].  But Lopez and Holznagle both testified that Lopez had erred in designating Precopio's absence on those days as being FMLA leave.  [ECF No. 22-27, PageID.260].  Precopio provides no evidence that

contradicts Kroger's position that, after investigating, its decision-makers concluded that Precopio had violated the non-call/no-show policy.

Precopio also argues that the facts Kroger relied upon are contested and thus raise a question of fact as to whether Kroger's articulated reason for termination was pretextual. This "bare assertion that [Kroger's] proffered reason has no basis in fact is insufficient to call [Kroger's] honest belief into question, and fails to create a genuine issue of material fact." *Joostberns*, 166 F. App'x at 791. The Court grants summary judgment in favor of Kroger on the FMLA retaliation claim.

## D.

The parties agree that the same analysis used for FMLA retaliation claims applies to Precopio's PWDCRA claims. *See Joostberns*, 166 F. App'x at 798 ("Like Plaintiff's FMLA claims, Plantiff's . . . PWDCRA claims must also fail because Plaintiff fails to produce evidence sufficient to create genuine issue of material fact as to whether Defendant's articulated reason for terminating Plaintiff was pretextual."). Kroger is thus entitled to summary judgment on Precopio's PWDCRA claim because he has not demonstrated that its articulated legitimate reason for terminating him was pretext for discrimination.

## IV.    Conclusion

Kroger's motion for summary judgment is **DENIED** for Count I of

Precopio's complaint and **GRANTED** for Counts II and III.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: June 12, 2020

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses disclosed on the Notice of Electronic Filing on June 12, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
